# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2590-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

C.P.,

      Defendant,

 and

F.A., SR.,

      Defendant-Appellant.

_____

IN THE MATTER OF F.A., JR.,
a minor.

_____

Submitted March 10, 2021 – Decided April 9, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0231-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Gilbert G. Miller, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Maureen Bull, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Nancy Fratz, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant F.A., Sr.[1] appeals from a February 10, 2020 order terminating his parental rights to his son, F.A., Jr.[2] On appeal, F.A., Sr. contends the Division of Child Protection and Permanency (the Division) failed to satisfy the four prongs of the "best interests standard" embodied in N.J.S.A. 30:4C-15.1(a). The Law Guardian supported termination during trial and joins the Division in urging us to reject F.A., Sr.'s argument. We affirm, substantially for the reasons

---

[1] Pursuant to Rule 1:38-3(d)(12), we use initials to protect the privacy of the participants of these proceedings.

[2] C.P. (the mother) executed an identified surrender of her parental rights during trial. She has not filed a brief and is not a participant in this appeal.

set forth in Judge Bernadette N. DeCastro's written opinion. We add only the following remarks.

We discern the following facts, derived from the voluminous record, as relevant to our decision. C.P. gave birth to F.A., Jr. in January 2015. F.A., Sr. is the child's biological father. He is also the father of another child with a different mother.

Due to the Division's prior involvement, a Division caseworker conducted a home visit on December 7, 2016 with the assistance of law enforcement. Garbage bags were piled near the front door, rotten food was in the refrigerator, and dog feces and urine were on the floor near the kitchen. The crib was "filthy" and covered in urine stains. As a result of the deplorable conditions of the home, the Division conducted a Dodd emergency removal.[3] F.A., Jr. was taken to the police station where paramedics observed scratches on his face as well as a rash on his back and buttocks. It was later reported that F.A., Jr. had scabies and lice.

---

[3] "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82." N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

F.A., Sr. was not present when the Division conducted the emergency Dodd removal because, on November 18, 2016, he was arrested for numerous drug offenses. Following his arrest, F.A., Sr. was taken to Hoboken University Medical Center where he tested positive for marijuana and cocaine, and admitted to taking Vicodin. F.A., Sr. informed hospital staff that he had a history of bipolar disorder and depression but was not taking medication.

On December 22, 2016, F.A., Sr. was released from jail and, because he was homeless, was forced to reside with his mother. The Division provided F.A., Sr. with bus and rail passes to facilitate therapeutic visitation at Catholic Charities[4] and services. On February 14, 2017, the Division transported F.A., Sr. and C.P. to an assessment at the Center for Evaluation and Counseling (CEC). A Personality Assessment Inventory (PAI) revealed F.A., Sr. suffered from depression, low frustration tolerance, and antisocial behavior. F.A., Sr. admitted to previously using marijuana and cocaine. The CEC recommended, among other things, a substance abuse assessment with random urine screening and individual therapy. After the evaluation, F.A., Sr. and C.P. indicated that they were "homeless" and did not have stable housing.

---

[4] F.A. Sr.'s visitation with his son was not consistent.

4

The Division referred F.A., Sr. to Preferred Children's Services (PCS) for a substance abuse assessment. PCS diagnosed him with cannabis use disorder, cocaine use disorder, and opioid use disorder. PCS recommended that F.A., Sr. attend Giant Steps for substance abuse treatment. Although notified of his May 2, 2017 appointment, F.A., Sr. failed to attend Giant Steps. On June 23, 2017, F.A., Sr. was arrested again for several drug-related offenses.[5] The Division referred F.A., Sr. to Visiting Homemaker Services (VHS) who ultimately recommended substance abuse treatment and individual counseling.

The Division referred F.A., Sr. to Giant Steps again, which he began attending in July 2017. On September 13, 2017, Giant Steps conducted a psychiatric evaluation and diagnosed F.A., Sr. with antisocial personality disorder. Giant Steps noted F.A., Sr. did not see a problem with his drug use and did not believe he needed mental health treatment. A month later, he was discharged from Giant Steps for non-compliance with the attendance and urine analysis policies. On October 23, 2017, F.A., Sr. re-enrolled in the program. The next day, Giant Steps issued a report indicating he suffered from antisocial personality disorder and cannabis dependence. On November 14, 2017, F.A.,

---

[5] F.A., Sr. pled guilty to third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1), and was sentenced to two years' probation.

Sr. was again discharged from the program due to non-compliance with the urine analysis policy; Giant Steps recommended he attend Turning Point for residential treatment.

F.A., Sr. failed to attend Turning Point. The Division referred F.A., Sr. for another substance abuse evaluation at PCS on January 2, 2018; however, no recommendation was made because he provided a diluted urine sample. On February 15, 2018, F.A., Sr. was discharged from PCS. Five days later, he tested positive for cocaine and marijuana. On March 13, 2018, the Division referred F.A., Sr. for another substance abuse evaluation at PCS. Around that time, the Division referred him to Dr. Joel Nunez for individual counseling.

On May 9, 2018, PCS conducted a substance abuse evaluation and diagnosed F.A., Sr. with moderate cannabis use disorder, mild cocaine use disorder, and mild opioid use disorder in sustained remission. PCS recommended further evaluation regarding F.A. Sr.'s antisocial personality disorder and intensive outpatient substance abuse treatment at Freedom of Choice. On July 10, 2018, the Division referred F.A., Sr. for substance abuse treatment at Freedom of Choice. Before he could attend, however, he tested positive for cocaine use.

A-2590-19

By August 23, 2018, F.A., Sr. attended only nine sessions with Dr. Nunez. On September 1, 2018, he was arrested again for numerous drug-related offenses. After failing to attend two sessions, F.A., Sr. was discharged from Dr. Nunez's office. He admitted that he simply "stopped going" because he "didn't feel it was benefiting [him] or helping [him] in any way." Despite the Division's attempts to reengage him, F.A., Sr. was not "interested in individual therapy" and felt it was "unhealthy."

Around the same time, F.A., Sr. stopped attending his appointments at Freedom of Choice. On September 11, 2018, he tested positive for both cocaine and marijuana. On September 30, 2018, he was administratively discharged from Freedom of Choice for failure to comply with the attendance policy. On April 12, 2019, F.A., Sr. was again arrested for several drug-related offenses. He was required to complete the Hudson County Drug Court Program through Freedom of Choice. Notwithstanding the intensive outpatient program, F.A., Sr. tested positive for marijuana or cocaine on numerous occasions, most recently on September 5, 2019. A Freedom of Choice report later indicated that F.A., Sr. met the DSM-V criteria for marijuana and cocaine use disorder and should continue treatment.

A-2590-19

Following the Dodd removal, the Division initially placed F.A., Jr. in a resource home and then with his paternal uncle, J.A. However, J.A. requested the child's removal and referred the Division to a family friend, B.V. The Division subsequently placed F.A., Jr. with B.V. After B.V. also requested his removal, F.A., Jr. was placed with the resource parents, K.D. and T.R. In the interim, the Division considered, and ruled out, members of F.A., Jr.'s family for a possible placement, including M.A. (the paternal grandmother) and C.P.P. (the maternal grandmother). F.A., Jr. was then placed with Je.A. (the paternal aunt) but was subsequently removed because she found the situation "extremely overwhelming."[6] F.A., Jr. was placed back with the resource parents, where he remains today.[7] The resource parents' plan is to adopt F.A., Jr. to provide F.A., Jr. with a sense of permanency and stability. The resource parents are willing to keep C.P. in her son's life and maintain some level of contact.

Judge DeCastro conducted a five-day trial on the Division's guardianship complaint. At the trial, the Division presented extensive documentary evidence,

---

[6] In May 2019, both C.P. and F.A., Sr. effectuated voluntary identified surrenders in favor of Je.A. These were subsequently vacated after Je.A. indicated that she was unable to adopt F.A., Jr.

[7] On November 29, 2019, the Division ruled out E.A. (the paternal great uncle) based on the child's best interests.

as well as testimony from caseworkers Teresa Espinal and Denise Thomas, Dr. Karen Wells, Dr. Samiris Sostre, and resource parent T.R. The Law Guardian produced Dr. Elayne Weitz as an expert. Dr. Gerard Figurelli testified on behalf of C.P. Although F.A., Sr. did not present any expert witnesses, he testified on his own behalf.

Dr. Wells, an expert in psychology, conducted a psychological evaluation of F.A., Sr. in December 2017. Dr. Wells expressed concerns because F.A., Sr. failed to consider the "full picture" of the issues necessitating the Division's involvement. The results of the PAI indicated that F.A., Sr. suffered from antisocial personality disorder, impulsivity, and a lack of empathy. Within a reasonable degree of psychological certainty, Dr. Wells concluded F.A., Sr. suffered from cocaine and cannabis use disorder, antisocial behavior, and impulse control disorder. Dr. Wells opined that F.A., Sr. was unable to safely parent his son because he was non-compliant with the services offered, continued to violate probation, did not have adequate housing, and did not make progress in terms of addressing his mental health and substance abuse issues.

Dr. Wells conducted an updated psychological evaluation, as well as a bonding evaluation, with F.A., Sr. in August 2018. Dr. Wells' clinical diagnosis was "very consistent" with the previous evaluation, as F.A., Sr. continued to

9

have criminal issues associated with drug-related activity. Dr. Wells concluded that F.A., Sr. would not be amenable to making sufficient changes in the foreseeable future to be able to parent his son. Although Dr. Wells noted that F.A., Sr.'s interaction with his son was appropriate, she characterized the bond as "fluid" and opined that F.A., Jr. did not view F.A., Sr. as the psychological parent to meet his day-to-day needs.

Dr. Wells conducted updated psychological and bonding evaluations of F.A., Sr. in November 2019. Dr. Wells expressed concerns because, even nearly two years after her initial evaluation, F.A., Sr. still was testing positive for drugs. Dr. Wells maintained her opinion that F.A., Sr. was unable to parent his son because he was in the early stages of addressing his substance abuse issues. Dr. Wells also maintained her opinion that F.A., Sr. was not his son's primary psychological parent. Dr. Wells concluded he was unable to independently parent his son.

Dr. Wells also conducted bonding evaluations with the resource parents in August 2018 and November 2019. Dr. Wells observed the resource parents were actively engaged and accommodating of F.A., Jr.'s needs. Dr. Wells described the bond between the resource parents and F.A., Jr. as "significant" and opined that, due to the reliability and continuity of their care, F.A., Jr.

10

viewed them as his psychological parents. Dr. Wells indicated that if F.A., Jr. was removed from the care of the resource parents, he would be "devastated" and suffer emotional and psychological harm. Dr. Wells noted the resource parents could mitigate any harm should F.A., Sr.'s parental rights be terminated. Dr. Wells concluded that terminating F.A., Sr.'s parental rights would not do more harm than good, and that the appropriate plan was for F.A., Jr. to be permanently placed with the resource parents.

Dr. Sostre, who conducted psychiatric evaluations in May 2018 and October 2019, diagnosed F.A., Sr. with substance abuse disorder and antisocial personality disorder. The antisocial personality disorder was based on F.A., Sr.'s extensive criminal history, irritability and aggression, and failure to accept responsibility. Dr. Sostre opined that F.A., Jr. would potentially be exposed to violence, instability, and a chaotic environment with little to no empathy. Dr. Sostre indicated the prognosis was "very poor" because there was no effective psychotherapy for antisocial personality disorder.

Dr. Weitz, an expert in parental fitness, conducted a psychological and bonding evaluation with F.A., Sr. in November 2019. Dr. Weitz noted that F.A., Sr. denied most of the concerns raised by the Division. Dr. Weitz highlighted that F.A., Sr.'s "long-term" substance abuse issue and his "sporadic"

11

employment could pose an issue as to his son's basic needs for food and shelter. Dr. Weitz expressed concern that F.A., Sr. embellished violent and aggressive behaviors that his son was displaying. Despite the presence of a relationship, Dr. Weitz opined that no bond existed between F.A., Sr. and his son. Dr. Weitz determined that F.A., Sr. was unable to independently parent and care for his son. Dr. Weitz concluded that F.A., Jr. would be at risk of neglect given F.A., Sr.'s "long history of legal offenses and substance abuse" as well as his inability to secure stable housing.

Dr. Weitz also conducted a bonding evaluation with the resource parents in November 2019. Dr. Weitz observed that there was a "mutual affection" between F.A., Jr. and the resource parents, and that they were "highly active in terms of setting the stage for play" and "encouraging pro social interaction." Dr. Weitz opined there was a secure bond and that F.A., Jr. viewed the resource parents as his psychological parents. Dr. Weitz highlighted that it would cause F.A., Jr. significant and enduring harm if he were removed from the care of the resource parents. Dr. Weitz emphasized terminating F.A., Sr.'s parental rights would not do more harm than good and that, conversely, removing F.A., Jr. from the resource parents would do more harm than good. Dr. Weitz indicated the resource parents could mitigate any harm that would result from terminating

12

F.A., Sr.'s parental rights. In short, Dr. Weitz concluded that it was in F.A., Jr.'s best interests to remain placed with the resource parents.

Dr. Figurelli, an expert in psychology, conducted a comparative bonding evaluation in November 2019. Dr. Figurelli observed that F.A., Jr. appeared to be thriving in the care of the resource parents: they actively engaged him as well as provided consistent guidance and direction as to his conduct; they were attuned to his needs; and they emotionally supported him. Dr. Figurelli opined that the resource parents were F.A., Jr.'s central parental attachment figures. Dr. Figurelli indicated removing F.A., Jr. from the resource parents would have a "disorganizing impact" on his development and lead to a regression of his behavioral issues. Dr. Figurelli recommended that F.A., Jr. remain in the care of his resource parents, but have appropriate contact with C.P.

At trial, F.A., Sr. admitted he smoked marijuana and "dabbled with other drugs" like cocaine. Although he was expected to complete a substance abuse program, F.A., Sr. acknowledged that he was discharged from Giant Steps and Freedom of Choice for non-attendance. F.A., Sr. testified that he currently resided with his grandmother and planned on renting an apartment with his mother. F.A., Sr. rebuffed the notion that he had a history of mental illness and denied reporting to medical staff at Hoboken University Medical Center that he

13

had a history with bipolar disorder and depression. F.A., Sr. disagreed with Dr. Wells and Dr. Sostre's diagnosis of antisocial personality disorder and, as such, was unwilling to undergo treatment.

In a twenty-page written opinion, which detailed the evidence presented at trial and the history of the Division's involvement, Judge DeCastro found the Division satisfied all four prongs of the "best interests of the child" test enumerated under N.J.S.A. 30:4C-15.1(a). The judge determined F.A., Jr. was "harmed as a result of the almost three[ ]years spent in foster care." Judge DeCastro concluded that F.A., Sr.'s failure to remedy the reasons for the Division's involvement, specifically with regards to his substance abuse and mental health issues, his continued involvement with the criminal justice system, and his inability to secure independent and adequate housing despite being offered assistance established the first prong, that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship." N.J.S.A. 30:4C-15.1(a)(1).

Based upon the uncontroverted expert testimony presented, Judge DeCastro concluded the Division proved the second prong, that "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of

14

permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). The judge determined F.A., Sr. was "unable to rectify the reasons for the Division's involvement." The judge indicated he was "in no better position today to safely parent his son than when the child was removed." The judge, relying on Dr. Weitz's opinion, found F.A., Sr. was not able to independently parent his son as he needed to remain drug free for a year after Drug Court, maintain employment, obtain housing, and complete individual counseling.

Judge DeCastro, referencing the testimony of both Dr. Wells and Dr. Weitz, also concluded "separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child[.]" N.J.S.A. 30:4C-15.1(a)(2). In that regard, the judge noted that Dr. Wells opined removing F.A., Jr. from the resource parents would cause "emotional and psychological harm." The judge found that Dr. Weitz's conclusions were consistent with Dr. Wells' findings in that removing F.A., Jr. from the resource parents would cause severe and enduring harm.

Judge DeCastro concluded the Division proved it "made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home," establishing the third prong of the best interests test. N.J.S.A. 30:4C-15.1(a)(3). The judge detailed the Division's

unsuccessful efforts to refer F.A., Sr. for individual counseling and substance abuse treatment. For example, the judge noted that the F.A., Sr. was referred to Dr. Nunez but only attended nine out of fifty-two sessions and was subsequently discharged. The judge also correctly found that F.A., Sr. was referred to Giant Steps, Turning Point, and Freedom of Choice for substance abuse treatment, but was discharged for non-attendance. Ultimately, Judge DeCastro determined "by clear and convincing evidence that the Division exerted reasonable efforts" but F.A., Sr. simply "failed to comply." In that same vein, the judge found that the Division explored, and ruled out, several relatives including both grandmothers, the great paternal uncle, and the paternal aunt. Indeed, the judge noted F.A., Jr. was placed with his paternal uncle and paternal aunt, as well as a family friend, but they all requested his removal. Judge DeCastro therefore concluded that the Division "considered alternatives to termination of parental rights[.]" N.J.S.A. 30:4C-15.1(a)(3).

Finally, Judge DeCastro found the Division successfully proved the fourth prong, that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The judge cited Dr. Wells' testimony that F.A., Jr. required permanency and, if removed from the care of the resource parents, would suffer enduring emotional and psychological harm. Since the Division

16

established all four prongs, Judge DeCastro concluded it was "in the child's best interest to terminate the parental rights" of F.A., Sr.

Parents have a constitutionally protected right to the care, custody, and control of their children. In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). However, that right is not absolute. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 553 (2014) (citing K.H.O., 161 N.J. at 347). At times, a parent's interest must yield to the State's obligation to protect children from harm. In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a four-prong test to determine when it is in the child's best interest to terminate parental rights. N.J.S.A. 30:4C-15.1(a) requires the Division to prove, by clear and convincing evidence, that:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement

> outside the home and the [judge] has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

The four prongs of the test are "not discrete and separate[,]" but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)).

Our review of Judge DeCastro's decision is limited. We will not disturb a trial judge's factual findings so long as they are "supported by adequate, substantial, and credible evidence." R.G., 217 N.J. at 552 (citing N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We defer to the judge's evaluation of witness credibility, and to her expertise in family court matters. Id. at 552-53; Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). Thus, the factual findings underpinning a termination decision "should not be disturbed unless they are so wholly unsupportable as to result in a denial of justice." N.J. Div.

of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)).

After reviewing the lengthy record with those standards in mind, we find no merit to F.A., Sr.'s argument that the Division failed to establish the four prongs of the best interest test. We are satisfied that Judge DeCastro's factual findings as to each prong are supported by substantial credible evidence in the record.

The record shows that F.A., Sr. had serious mental health and substance abuse issues that he failed to remediate through the services offered by the Division. In that regard, the Division made reasonable efforts to provide services, facilitate visitation, and seek alternatives to termination. F.A., Sr.'s inability to eliminate the harms facing his son cannot be reasonably be attributed to any alleged deficiencies on the part of the Division. We therefore agree the Division proved all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence, and terminating F.A., Sr.'s parental rights was in F.A., Jr.'s best interests.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2590-19